NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| UNITED B INTERNATIONAL CORP., | : | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | Civil Action No. 04-CV-2116 (DMC) |
| MAHER TERMINALS, INC., | : | |
| | : | |
| Defendant. | : | |

<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>:

This matter comes before the Court upon motion by Maher Terminals Incorporated

("Defendant"), for summary judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure on all counts of the Complaint filed by United B International ("Plaintiff"). No oral

argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons

set forth below, Defendant's motion is **denied**.

## I. <u>BACKGROUND</u>

Defendant performs stevedoring operations, including loading and unloading ocean borne

cargo, in Port Elizabeth, New Jersey. (Defendant's Statement of Material Facts ("Def. R. 56.1

Stmt.") at 1). In addition, Defendant also stores unloaded cargo temporarily until it can be

transported to its next destination. (<u>Id.</u>) On December 13, 2001, Defendant unloaded Plaintiff's

cargo from an ocean-going vessel that arrived at its port. (Defendant's Brief in Support of its

Motion for Summary Judgment ("Def. Br.") at 1). Defendant's Terminal Schedule allows parties

five business days to leave their goods in storage for no charge. (Id. at 2). After five business

days elapse, Defendant charges fees for cargo remaining in storage. (Id.) Parties who leave

goods in storage after five days are charged $28.00 per calendar day for the next first fives days

and then $73.00 per day thereafter. (Id.)

On February 25, 2002, Defendant notified Rich Shipping ("RS"), the party who shipped

the goods and issued the bill of lading, and informed RS that if the cargo was not removed from

storage within ten days it would be salvaged. (Plaintiff's Brief in Opposition to Defendant's

Motion for Summary Judgment ("Pl. Br.") at 2). Defendant notified RS because RS's name was

listed on the Cargo Declaration. (Def. R. 56.1 Stmt. at 2). Defendant then followed the

procedure set forth in the Terminal Schedule for selling cargo left in storage for excess of thirty

days and sold the cargo on May 10, 2002. (Id.) . The Cargo Declaration was given to Defendant

from the steamship line to allow Defendant to identify the cargo's owner. (Id.) Plaintiff did not

know of the sale until it had already been consummated. (Pl. Br. at 3).

## II. <u>DISCUSSION</u>

### A. Standard for Summary Judgment

Summary judgment is granted only if all probative materials of record, viewed with all

inferences in favor of the non-moving party, demonstrate that there is no genuine issue of

material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 330 (1986). The moving party bears the burden of

showing either (1) there is no genuine issue of fact and it must prevail as a matter of law; or (2)

that the non-moving party has not shown facts relating to an essential element of the issue for

which he bears the burden. Celotex, 477 U.S. at 331. If either showing is made then the burden

shifts to the non-moving party, who must demonstrate facts that support each element for which

he bears the burden and must establish the existence of genuine issues of material fact. Id. The

non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy

this burden, Fed. R. Civ. P. 56(e), but must produce sufficient evidence to support a jury verdict

in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

**B. Applicable Law**

The Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 1330, provides international

uniformity and balances power between shippers and owners. M.C. Machinery Systems, Inc. v.

Maher Terminals, Inc., 164 N.J. 192, 199 (2000). COGSA applies from the time goods are

loaded onto a ship until the time goods are discharged. Id. The parties contract controls and they

may agree to extend COGSA's coverage until delivery occurs. Id. at 199-200. When delivery of

the goods is made in accordance with COGSA, claims for conversion must be brought under

state law and COGSA will not apply. Id. at 205, citing Metropolitan Wholesale Supply, Inc. v.

M/V Royal Rainbow, 12 F.3d 58 (5th Cir. 1994).

Here the delivery of the goods was completed in accordance with the regulations set by

COGSA. (Pl. Br. at 2). There is no evidence the parties signed any contract extending

COGSA's protections. Plaintiff alleges Defendant committed an act of conversion when it sold

Plaintiff's shipment without Plaintiff's consent to satisfy its claim for unpaid demurrage fees.

(Plaintiff's Complaint ("Pl. Compl.") at 3). Due to the fact the alleged conversion occurred after

the goods were discharged in compliance with COGSA, federal maritime law does not apply. This case must be decided pursuant to New Jersey state law.

### C. $500 Damage Cap

COGSA § 4(5) states that "neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package." As explained, COGSA does not apply and therefore Defendant's damages cannot be limited to $500 under COGSA. Defendant claims that if this Court does find it liable to Plaintiff for conversion, its damages should still be limited to $500 pursuant to terms set forth in the terminal schedule.

The terminal schedule stated in pertinent part, "liability for loss or damage to cargo resulting from our [Defendant's] failure to exercise due and proper care in performing the services provided for herein, incurred during the handling, loading, unloading, receipt, delivery, or storage of such cargo on the terminal at any time. . . shall not exceed $500." (Def. Br. at 6). This clause does not mention liability for tort claims. While this clause limits Defendant's liability for lost or damaged goods, it does not limit Defendant's liability in regard to conversion. Therefore, Defendant's argument that its liability should be limited to $500 in the event this Court finds in favor of the Plaintiff is inapplicable to this case.

### D. The Controlling Document

Defendant claims summary judgment should be granted in its favor because it complied with the governing provisions set forth in the Terminal Schedule and the Cargo Schedule and

notified the owner of the cargo that it intended to sell the goods it was holding in storage. (Id. at

4).  Defendant further claims it was correct in notifying RS, and not Plaintiff, because RS was

named the owner of record on Cargo Declaration. (Id.)  Plaintiff alleges it should have been

notified, and not RS, because Plaintiff's name appeared on the bill of lading. (Pl. Compl. at 3).

Due to the fact that it is not clear which document controls, material issues of fact exist,

prohibiting this Court from granting Defendant's motion for summary judgment.

### III. CONCLUSION

For the reasons stated, it is the finding of this Court that Defendant's motion for summary

judgment is **dismissed**.  An appropriate Order accompanies this Opinion.

Dennis M. Cavanaugh, U.S.D.J.

Date:        October 20, 2005
Original:    Clerk's Office
Cc:          All Counsel of Record
             The Honorable Mark Falk, U.S.M.J.
             File